# EXHIBIT A

SEALED    Case 4:23-cv-01224-P    Document 1    Filed 12/11/23    Page 1 of 19    PageID 1

DEC 11 2023 AM8:50
FILED-USDC-NDTX-FW
*p*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) **4-23CV-1224P** |
| AGRIDIME LLC, | ) **FILED UNDER SEAL** |
| JOSHUA LINK, and | ) JURY TRIAL DEMANDED |
| JED WOOD, | ) |
| | ) |
| Defendants, | ) |
| | ) |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "SEC" or "Commission") alleges:

## NATURE OF THE ACTION

1.      The Commission brings this action to halt an ongoing, fraudulent, and unregistered offering of securities and active Ponzi scheme being perpetrated on investors by Agridime LLC ("Agridime"), Joshua Link, and Jed Wood (collectively, "Defendants").

2.      Since 2021, Agridime has raised at least $191 million from more than 2,100 investors in at least 15 states, selling investment contracts related to the purchase and sale of cattle ("Cattle Contracts"). Defendants promised investors guaranteed annual returns ranging from 15% to 32% and marketed the Cattle Contracts on Agridime's websites as a way for investors to passively profit from cattle ownership "without having to do all the work." In advertising, the Defendants boasted, "We know it sounds too good to be true."

3.      Unfortunately for investors, the investment offering was too good to be true. Agridime has used at least $58 million of investor funds—that Agridime represented would be

used to purchase, feed, and process cattle—to pay returns to existing investors. Defendants did

not buy the number of cattle required to fulfill the Company's obligations under the Cattle

Contracts, and as a result Agridime has only been able to return principal and pay promised

returns by making Ponzi payments. Defendants have never disclosed these Ponzi payments when

soliciting new investors. And they have failed to disclose that they have used an additional $11

million to pay 10% commissions to salespeople, including owners Wood and Link, who also

solicit investments in Agridime Cattle Contracts.

4.      Agridime has violated cease-and-desist orders issued earlier this year by Arizona

and North Dakota by continuing to sell its securities in fraudulent, unregistered transactions in

those states. Agridime has sold more than $1 million of Cattle Contracts to Arizona residents

since the entry of the Arizona order and more than $9 million to North Dakota residents since the

issuance of that state's order. And on October 18, 2023, an Agridime salesman in Arizona

admitted under oath that he is still selling Cattle Contracts from Arizona.

5.      Through their actions, Defendants violated, and unless enjoined will continue to

violate, the antifraud and securities-registration provisions of the federal securities laws, namely

Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and

Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5] and Sections 5(a), 5(c), and 17(a) of the

Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)]. Under

Section 20(a) of the Exchange Act, Defendants Link and Wood are also liable as control persons

for Agridime's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder [15

U.S.C. §§ 77o(a) and 78t(a)]. Unless Defendants are enjoined by the Court, they will continue to

fraudulently offer and sell unregistered securities in violation of the federal securities laws.

6.      To protect the public from further fraudulent activity, the SEC brings this action

against Defendants and seeks: (i) permanent injunctive relief; (ii) disgorgement of ill-gotten

gains, plus prejudgment interest; and (iii) civil penalties. Because of the ongoing nature of the

fraudulent offering and Ponzi scheme, and the risk of continuing investor loss and asset

dissipation, the Commission also seeks emergency relief against Defendants, including a

temporary restraining order (and preliminary injunction), an asset freeze, the appointment of a

receiver, an accounting, and orders expediting discovery, permitting alternative means of service,

and prohibiting alteration or destruction of documents.

## **DEFENDANTS**

7.      **Agridime LLC** is a Texas limited liability company co-founded by Link and

Wood in 2017, with its principal place of business in Fort Worth, Texas. Link and Wood jointly

control Agridime as its highest-ranking officers and managing members, each owning a 45.5%

interest in the company. Agridime has operations in Texas, Arizona, Kansas, North Dakota, and

other states, and purports to be a meat-distribution company with a "proprietary beef supply

chain." Agridime is subject to cease-and-desist orders issued by securities regulators in Arizona

and North Dakota.

8.      **Joshua Link**, age 30, resides in Gilbert, Arizona. He is an owner, managing

member, and the Executive Director of Agridime. He co-founded and jointly controls Agridime

with Wood. Link is subject to cease-and-desist orders issued by securities regulators in Arizona

and North Dakota. On November 11, 2023, Arizona filed a contempt motion against Agridime

and Link for violating its order.

9.    **Jed Wood**, age 62, resides in Fort Worth, Texas. He is an owner, managing

member, and the Operations Director of Agridime. He co-founded and jointly controls Agridime

with Link.

## JURISDICTION AND VENUE

10.    The Commission brings this action pursuant to authority conferred upon it by

Sections 20(b) and 20(d) of the Securities Act [15 U.S.C. §§ 77t(b) and 77t(d)] and Sections

21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u(e)].

11.    This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and

22(a) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), and 77v(a)] and Sections 21(d), 21(e),

and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), (e), and 78aa].

12.    The defendants offered and sold investment contracts purportedly relating to

cattle. Pursuant to Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b(a)(1)] and Section

3(a)(10) of the Exchange Act [15 U.S.C. § 78c(a)(10)], Defendants' Cattle Contracts are

securities because they are investment contracts.

13.    In connection with the conduct described in this Complaint, Defendants, directly

or indirectly, made use of the mails or the means or instruments of transportation or

communication in interstate commerce by, among other means, soliciting and accepting

investments via the Internet, transmitting investor contracts via email, executing investor

contracts via an on-line software portal, and accepting investor deposits via mail, wire, or other

electronic-funds transfer.

14.    Venue is proper in this District because at all relevant times: (a) Agridime

maintained its principal place of business in Fort Worth; (b) Wood resided in Fort Worth; and (c)

Agridime, Wood, and Link conducted business in this District. Further, acts, transactions, and

courses of business constituting violations of the federal securities laws alleged in this Complaint

occurred within this District, including but not limited to Defendants' solicitations of investors

and the acceptance and disbursement of investor funds.

## FACTUAL ALLEGATIONS

### I.      Link and Wood Founded and Control Agridime

15.      Link and Wood have served as Agridime's highest-ranking officers since co-

founding the company in 2017.

16.      Wood controls Agridime's cattle operations, including overseeing the firm's

finances. Wood signs Agridime's checks and, with the assistance of the company's controller, is

primarily responsible for overseeing the bank accounts, including payments to and from

investors.

17.      Link serves as Agridime's Executive Director, a role he describes as equivalent to

CEO. He has personally solicited investors, trained and directed the activities of Agridime's

salespeople, and executed Cattle Contracts on Agridime's behalf.

### II.     Defendants Offered and Sold Fraudulent Cattle Contracts

18.      Since at least January 2021, Agridime has raised over $191 million from more

than 2,100 investors in at least 15 states, purporting to sell investments in cattle under Cattle

Contracts.

19.      In the Cattle Contracts, Agridime agreed to: (a) sell cattle to an investor for

$2,000 per calf; and (b) after a year, buy back the same cattle at a higher price to provide a

specific guaranteed investment return. Agridime told investors it would use their funds to

purchase, feed, finish, process, and sell specific cattle. Instead of using investor funds to do these

things, Agridime instead diverted tens of millions of dollars in investor funds to make Ponzi

payments to prior investors. As a result, Agridime has not purchased enough cattle to fulfill its Cattle Contracts. Agridime's investors, therefore, do not actually invest in specific, identifiable animals. Instead, the success of their investments depends on the success of Agridime's purported cattle operation, including its ability to attract new investors.

20.    The Cattle Contract investor's role is entirely passive. On its website at www.agridime.com, Agridime described the Cattle Contracts as an opportunity to "make money raising cattle without having to do all the work." The investor did not take delivery of any cattle and assumed no responsibility for the care or feeding of any cattle.

21.    Since at least August 2023, Agridime has also offered a new variant of its Cattle Contract from the company's new website at www.agridimestore.com, soliciting investments on its website of $4,500 "for the purchase of one bred cow in [Agridime's] supply chain and [for Agridime] to feed that cow until it gives birth to its calf. This cow will remain on [Agridime's] ranches & will be fed and cared for during this time." Under this variant, the investor still does not take delivery of any cattle and assumes no responsibility for their care or feeding. Indeed, these Cattle Contracts make the investor's passive role even more clear, explicitly stating that "[t]he cattle purchased from Agridime . . . shall remain in the care and custody of Agridime."

22.    Agridime promises investors "guaranteed 15-20% yearly profits" on the Cattle Contracts and even guarantees returns as high as 32% for some contracts, including contracts to purchase 50 head of cattle or more. Agridime includes these guarantees in the contracts themselves and displays them prominently on the company's website and in social-media ads promoting the investment, as reflected in the images below:



# BUY LIVE CATTLE

**Have you ever wanted to make money raising cattle without having to do all the work?**

We know it sounds too good to be true, however, in order to meet increased demand we are partnering with individuals and organizations to contract cattle into our beef supply chain.

We supply retails outlets, meat distributors and restaurant food service companies with farm fresh beef. We are inviting individuals and organizations to purchase cattle with us in order to supply beef to these customers.

All cattle purchased during Q1 of 2023 will be guaranteed 15-20% yearly profits. We also offer 20% yearly profits on contracts of 50 or more.

23.    Agridime has also advertised the Cattle Contracts on an unrestricted, publicly available Facebook page with an animated video titled, "Make 15%-20% Yearly Returns by Purchasing Cattle With Us." The video explains that the investor's purchase payment covers the cost to "feed that animal to finish, fully process the beef into retail packaging, and then ultimately sell the beef."

24.    Agridime has engaged in a general solicitation of investors by using its publicly available website, unrestricted Facebook page, and other social media to attract investors. Agridime and its sales representatives have not taken steps to verify the accredited status of

investors, and they have not limited the offer or sale of the Cattle Contracts to accredited investors. Agridime's website allowed investors to purchase online without any income verification or disclosures. Agridime's stated practice has been to send investors their Cattle Contracts by email only *after* investors send funds to Agridime (via cash, wire transfer, check, Shopify, transfers from self-directed IRAs, or a number of other payment options, including installment payments). At that point, the investor signs the contract electronically, and then Link (or an authorized sales representative) affixes Link's electronic signature via DocuSign.

25.    Neither Agridime nor its Cattle Contract securities are registered with the Commission in any capacity.

### III.    Defendants Misused and Misappropriated Investor Funds

26.    Despite Agridime's explicit claim on its website that it would use investor funds to purchase, feed, finish, process, and sell specific cattle, the company actually used investor funds to make Ponzi payments to earlier investors and to pay undisclosed sales commissions to Agridime salespeople.

#### a.    Defendants Have Used At Least $58 Million in Investor Funds to Make Ponzi Payments

27.     Contrary to its promises to investors, Agridime has acquired far fewer cattle than it has sold to investors in Cattle Contracts. Because of its failure to acquire, raise, feed, and finish enough cattle, as promised, Agridime has not generated—and cannot generate—sufficient revenues to repay its investors. As a result, Agridime does not have the assets needed to cover its obligations.

28.    During the period from December 1, 2022, to September 30, 2023, Agridime has used at least $58 million in investor funds from the sale of new Cattle Contracts to make

principal and profit payments to previous investors. In short, Agridime is operating a Ponzi scheme.

29.     As of September 5, 2023, Agridime held Cattle Contracts requiring them to pay investors more than $123 million in principal (obligations to repurchase cattle), plus approximately $24 million in guaranteed "profits." Given the company's cash balances of less than $1.5 million as of September 30, 2023, and insufficient operating revenues, it appears that Agridime's Ponzi scheme will soon implode, unless it continues to raise money from new investor-victims.

**b.  Defendants Paid Undisclosed Sales Commissions to Salespeople**

30.     Agridime pays its sales representatives a commission—typically 10%—for each Cattle Contract sold. Through May 2023, Agridime paid its salesforce aggregate commissions exceeding $11.1 million, including commissions of: (1) at least $5.6 million to a salesperson in North Dakota; (2) $1.3 million to Link and his wife; and (3) $1.3 million to Wood.

31.     When representing to investors how it will use their funds, Agridime does not disclose the 10% commission. For example, Agridime's website included a "Financial Summary" purporting to explain how all investor funds are to be used, as reflected in the image below.

# Financial Summary

**Here's how the financials breakdown for the 15-20% return on our cattle contracts:**

The customer purchases cattle from us for $2,000 per head. That $2,000 is used to purchase one steer or heifer, feed that animal to finish, fully process the beef into retail packaging and then ultimately sell the beef.

32.     The Financial Summary on Agridime's website does not mention sales commissions. Likewise, Agridime's advertisements and Cattle Contracts fail to mention them. Thus, paying commissions contravened Agridime's representations to investors concerning the use of investor funds.

**IV.    Defendants' Materially False and Misleading Statements and Omissions**

33.     Agridime, Link, and Wood misled investors with promises of (in their own words) "too good to be true" guaranteed 15-32% annual profits. In reality, the company's cattle business did not generate revenue sufficient to pay the promised profits to its investors.

34.     Agridime's advertising and sales pitches touted the safety and security of the Cattle Contracts by claiming on Agridime's website, in the Cattle Contracts, and in sales pitches to investors that the Cattle Contract investments were protected by USDA bonding and insurance. Meanwhile, despite emphasizing the safety of the investment, Defendants failed to disclose to new and prospective investors that Agridime relied on investor funds to pay promised returns, thus concealing the Ponzi scheme.

35.     Defendants represented that investor funds would be used for specific purposes—feeding, finishing, and processing beef—but did not disclose that Agridime would use investor funds to pay 10% sales commissions to its salespeople. By omitting to disclose the commissions, Agridime's representations concerning the use of proceeds are, at best, incomplete and thus misleading under the circumstances.

36.     A reasonable investor would have considered it important to know that Agridime misappropriated more than $58 in investor funds to make Ponzi payments instead of purchasing, feeding, finishing, and processing cattle. Revelation of this diversion of investor funds, in

addition to the undisclosed payment of at least $11 million in commissions, would significantly

alter the total mix of information available to investors.

**V.    Defendants Are Violating State Cease-and-Desist Orders and Continue to Defraud Investors**

37.    Agridime continues to sell Cattle Contracts in numerous states, despite cease-and-

desist orders issued by two states.

38.    In April 2023, the Arizona Corporation Commission issued a temporary cease-

and-desist order, barring Agridime and Link from, among other things, selling unregistered

securities and committing fraud in the purchase or sales of securities (Cattle Contracts) in

violation of the Arizona Securities Act.

39.    Similarly, in May 2023, the North Dakota Securities Commission ordered Link

and Agridime to cease and desist from selling unregistered securities (Cattle Contracts), acting as

an unregistered broker-dealer, and engaging in fraudulent practices in connection with the offer

and sale of investment contracts represented to be investments in cattle.

40.    Agridime has violated both the North Dakota and Arizona cease-and-desist

orders. On November 13, 2023, Arizona filed a contempt action, alleging that Agridime, Link,

and Link's wife knowingly and willfully continued to offer and sell unregistered securities and

committed fraud in violation of Arizona's Securities Act and the previously issued cease-and-

desist order.

41.    In fact, Agridime has sold more than $1 million of Cattle Contracts to Arizona

residents *after* the entry of the Arizona cease-and-desist order. Additionally, on October 18,

2023, an Arizona-based Agridime salesman admitted under oath that he is still selling Cattle

Contracts from Arizona. Agridime's records also reveal that it has sold at least 18 contracts

totaling over $9 million to North Dakota residents after the issuance of that state's cease-and-desist order.

**CLAIMS FOR RELIEF**

**<u>FIRST CLAIM FOR RELIEF</u>**

**Violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and
Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]**

***Against all Defendants***

42.    Plaintiff re-alleges and incorporates paragraphs 1 through 41 of this Complaint by reference as if set forth verbatim in this Claim.

43.    By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, in connection with the purchase or sale of securities, by the use of the means or instrumentality of interstate commerce, or of the mails, knowingly or with severe recklessness:

    a.    employed a device, scheme, or artifice to defraud; and/or

    b.    made an untrue statement of a material fact, or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

    c.    engaged in an act, practice, or course of business which operated or would operate as a fraud or deceit upon any person.

44.    By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

12

## SECOND CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]

#### *Against All Defendants*

45.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 of this Complaint by reference as if set forth verbatim in this Claim.

46.     By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly, in the offer or sale of securities, by the use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, have:

      a.  knowingly or with severe recklessness employed a device, scheme, or artifice to defraud; and/or

      b.  knowingly, recklessly, or negligently obtained money or property by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

      c.  knowingly, recklessly, or negligently engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser.

47.     By reason of the foregoing, Defendants have violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## THIRD CLAIM FOR RELIEF

**Violations of Sections 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) & (c)]**

***Against All Defendants***

48.    Plaintiff re-alleges and incorporates paragraphs 1 through 41 of this Complaint by reference as if set forth verbatim in this Claim.

49.    By engaging in the acts and conduct alleged herein, Defendants, directly or indirectly:

      a.  made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement was in effect; and/or

      b.  for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by means or instruments of transportation, securities as to which no registration statement was in effect; and/or

      c.  made use of means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell, through the use or medium of any prospectus or otherwise, securities as to which no registration statement had been filed.

50.    By engaging in the conduct described above, Defendants have violated, and unless enjoined will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

## FOURTH CLAIM FOR RELIEF

### Control Person Liability Under Section 20(a) of the Exchange Act

#### *Against Defendants Link and Wood*

51.     Plaintiff re-alleges and incorporates paragraphs 1 through 41 of this Complaint by reference as if set forth verbatim in this Claim.

52.     Defendant Agridime violated Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, as alleged above in paragraphs 1 through 41.

53.     At all relevant times, Defendants Link and Wood directed and controlled Agridime's management and policies, including the conduct of its other representatives, and were controlling persons of Agridime and its representatives under Section 20(a) of the Exchange Act [15 U.S.C. § 78t(a)]. Defendants Link and Wood were culpable participants in the fraudulent conduct described above and knowingly or recklessly induced many of the material misrepresentations and misstatements alleged herein.

54.     Defendants Link and Wood are liable as control persons under Section 20(a) of the Exchange Act for Agridime's violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder. If not enjoined, Link and Wood will continue to cause Agridime to violate Section 10(b) of the Exchange Act and Rule 10b-5 thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a judgment:

1.     Permanently enjoining Defendants from violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), 77e (c), and 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

2.    Permanently enjoining Defendants Link and Wood from, directly or indirectly, including but not limited to, through any entity owned or controlled by them, participating in the issuance, purchase, offer, or sale of any security; provided, however, that such injunction shall not prevent Link or Wood from purchasing or selling securities for their own personal accounts;

3.    Barring Defendants Link and Wood from acting as an officer or director of any issuer that has a class of securities registered pursuant to Exchange Act Section 12 or that is required to file reports pursuant to Exchange Act Section 15(d) [15 U.S.C. §§ 78l and 78o(d)];

4.    Ordering the Defendants to disgorge all ill-gotten gains obtained as a result of the violations alleged herein, plus prejudgment interest thereon, pursuant to Exchange Act Sections 21(d)(3), 21(d)(5), and 21(d)(7) [15 U.S.C. §§ 78u(d)(3), 78u(d)(5), and 78u(d)(7)];

5.    Ordering Defendants to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] for violations of the federal securities laws as alleged herein; and

6.      Imposing such other and further relief as the Court may deem just and proper.


Dated:  December 11, 2023                Respectfully submitted,


                                         UNITED STATES SECURITIES AND
                                         EXCHANGE COMMISSION

                                         Matthew J. Gulde
                                         Illinois Bar No. 6272325
                                         Tyson M. Lies
                                         Texas Bar No. 24087927
                                         United States Securities and
                                         Exchange Commission
                                         Burnett Plaza, Suite 1900
                                         801 Cherry Street, Unit 18
                                         Fort Worth, TX  76102
                                         Telephone: (817) 978-3821
                                         Facsimile: (817) 978-4927
                                         guldem@sec.gov

                                         *Attorneys for Plaintiff*

SEALED

Case 4:23-cv-01224-P    Document 1    Filed 12/11/23    Page 18 of 19    PageID 18

2023 DEC 11 AM 8:49
RECEIVED-USDC-NDTX-FW

JS 44 (Rev. 10/20) (TXND 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

SECURITIES AND EXCHANGE COMMISSION

## DEFENDANTS

AGRIDIME, LLC, JED WOOD, and JOSHUA LINK

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Tarrant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Matthew J. Gulde, SEC
801 Cherry Street, Fort Worth, Texas 76102, 817-978-3821

Attorneys *(If Known)*

# 4-23CV-1224P

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [x] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 840 Trademark | [ ] 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [x] 850 Securities/Commodities/ Exchange |
| [ ] 196 Franchise | | | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 950 Constitutionality of State Statutes |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
[15 U.S.C. § 78j(b)]; [17 C.F.R. § 240.10b-5]; [15 U.S.C. § 77q(a)]; [15 U.S.C. §§ 77e(a) and 77e(c)];

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

[ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:   [x] Yes   [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
Dec 11, 2023

SIGNATURE OF ATTORNEY OF RECORD

### FOR OFFICE USE ONLY

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

JS 44 Reverse (Rev. 10/20) - TXND (10/20)

### INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

#### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If a related case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is related to this filing if the case: 1) involves some or all of the same parties and is based on the same or similar claim; 2) involves the same property, transaction, or event; 3) involves substantially similar issues of law and fact; and/or 4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.